**In re AMERICAN HOME FURNISH- INGS CORPORATION, Debtor.**

**Bankruptcy No. 81–01872.**

United States Bankruptcy Court, W.D. Washington, at Seattle.

April 11, 1985.

Craig S. Sternberg, Diamond & Sylvester, Seattle, Wash., for Creditors Chiprut and Angel.

**906**

Sheena Aebig, Shulkin, Hutton & Bucknell, Seattle, Wash., trustee.

## MEMORANDUM DECISION & ORDER

SIDNEY C. VOLINN, Bankruptcy Judge.

### I. PRELIMINARY

This matter involves a contest for the debtor's federal tax refund between a trustee in bankruptcy and a secured creditor. The basic issue is whether the creditor perfected its security interest by properly classifying or describing the tax refund in the financing statement as required by the Uniform Commercial Code.

Section 9.402(1) of the Uniform Commercial Code (RCW 62A.9–402 in this state) requires that the financing statement, *inter alia*, "... contains a statement indicating the types, or describing the items of collateral ...." Section 9–105 provides definitions of specific types of collateral and provides an index referring to other UCC sections for definitions of further categories of collateral. One of these other sections, 9–106, defines or classifies property which would encompass a tax refund as follows:

"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts.

The question before us is the type or classification of a tax refund as it is defined by § 9–106 and the effect thereof on perfection of the security agreement and financing statement here involved.

### II. FACTS

Creditors Joseph Chiprut and Harry Angel are former owners of the debtor corporation. They assert a perfected security interest in all remaining estate assets which includes $4,000 from the trustee's sale of the corporate assets and a $52,000 tax refund received by the trustee in 1984. The trustee agrees that Chiprut and Angel are perfected in the $4,000 from the liquidated assets but denies that they are perfected in the tax refund.

The security agreement contained the following description:

In consideration of any financial accommodation given, to be given, or continued by Secured Parties to Debtor, and as collateral security for the payment of all debts, obligations, or liabilities now existing or herein after existing, absolute or contingent of the Debtor to the Secured Parties, including indebtedness evidenced by the Promissory Note attached hereto, herein called indebtedness, Debtor, pursuant to Revised Code of Washington, Code § 61A. (sic) 9–101 et seq., hereby grants the Secured Parties a security interest in all of the assets of American Home Furnishings Corporation, including but not limited to the following items: all inventories of furniture, other inventories, vehicles, accounts, fixtures, *contract rights*, lease rights, documents of title, instruments, chattel paper, *other intangibles* and also all the proceeds and products of said collateral and all increases in said property and all property of a similar nature hereafter acquired by Debtor, herein called collateral. (emph. supp.)

While the term "other intangibles" differs from the statutory "general intangibles," for the purposes of this decision we treat the terms as equivalent.

The financing statement filed by these creditors described the collateral as follows:

All assets of American Home Furnishing Corp. including but not limited to: inventory, vehicles, accounts, fixtures, *contract rights*, lease rights, chattel paper

and all proceeds of said collateral and all additional assets of the corporation hereafter acquired. (emph. supp.)

Thus, while the security agreement designates contract rights and "other intangibles," the financing statement, insofar as material here, alludes only to "contract rights."

## III. ISSUES

The creditors base their claim to the tax refund upon two arguments. First, they contend that a tax refund, while it is properly characterized as a general intangible, may also be characterized as a contract right; since they specifically refer to contract rights in their filed financial statement they are perfected and entitled to the tax refund. Second, they contend that the security agreement expanded the financial statement to include the tax refund as a general intangible because the phrase "all proceeds of said collateral" in the financing statement is defined in the security agreement to include general intangibles.

The trustee's contention is that the tax refund is not a contract right and only a general intangible as to which the creditor's claim of security interest is unperfected by virtue of its omission from the financing statement.

## IV. DISCUSSION

### A.

The trustee's claim to the tax refund arises through conjunction of provisions of the Bankruptcy Code and Washington's version of the U.C.C. Under the Bankruptcy Code 11 U.S.C. § 544(a), the trustee in bankruptcy has, as of the filing date of the petition, the rights of a hypothetical lien creditor in all of the property of the debtor. *White and Summers,* The Uniform Commercial Code, 2d ed., page 997. Pursuant to the provisions of RCW 62A.9–301(1)(b) an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. If creditors Chiprut and Angel were not perfected as of the date of the filing of the petition in this case, the trustee must prevail over their claim to the tax refund.

There are two aspects to perfection of a security interest. First, there must be compliance with the provisions of RCW 62A.9–203(1) by execution of a security agreement. No issue is raised in this case regarding the execution of a security agreement creating a security interest which attached to the collateral described in the security agreement. Second, as to third parties such as encumbrancers and purchasers, the security interest must have been perfected, as of the date the petition was filed, pursuant to the provisions of RCW 62A.9–302 through 306. Perfection in this sense means public notice. A security interest that has attached is (with certain exceptions) perfected by filing a financing statement (RCW 62A.9–302(1)) with the appropriate public agency (RCW 62A.9–401). The financing statement is sufficient if it contains the information required by RCW 62A.9–402(1), which includes the requirement that the collateral be identified by type or description. The U.C.C. concept of "perfection" is crucial to notice filing and the business world. As stated by Judge Jenkins,

> The "perfection" section of the Uniform Commercial Code is designed to oil the wheels of commerce by placing information in a public place which will alert a member of the public to the interest a security holder has in a class of property or an item of property. It is designed to tell the public, among other things, what class (type) or item of property is subject to the claimed security interest and by omission, what type or item of property is not subject to the claimed security interest.

*In re Certified Packaging,* 8 U.C.C.Rep. Serv. 95, 100 (Bkrtcy.Ct.D.Utah 1970).

Thus, the creditors in this case are entitled to the tax refund only if they were properly perfected in that type or item of property at the time the debtor filed its petition in bankruptcy which is the time at

which the trustee's rights as a hypothetical lien creditor arose.

### B.

Creditors contend that a tax refund may be defined as either a "general intangible" or as a "contract right"; therefore, reference to "contract rights", in the financing statement, despite omission of the term "intangibles" therein, secured them as to the tax refund. In support of this contention they cite a paragraph from *White and Summers*, The Uniform Commercial Code, 2d ed., p. 962, which states in part

> If the secured party lists "accounts" on his financing statement and claims the debtor's *tax refund* in bankruptcy, he will be held unperfected as to the contract rights because the description on the financing statement does not include them. (emph. add.)

While the foregoing might be read to obliquely characterize a tax refund as a contract right, *White and Summers* present neither case authority nor analysis which would support the statement. It may also be noted that the passage from *White and Summers*, in the original 1st. ed., page 843, read "If the secured party lists 'accounts' on his financing statement and claims the debtor's *contract rights* in bankruptcy he will be held unperfected as to the contract rights because the description on the financing statement does not include them." (emph. add.) It is not clear why the words "contract rights" in the first edition became "tax refund" in the second edition. However, in both editions it is stated in the following paragraph "... the description of a bankrupt's right to his tax refund (a general intangible under Article Nine according to the court) is not covered by a financing statement which claims only accounts," citing *In re Certified Packaging, supra,* at 102. It would appear, therefore, that the citation to *White and Summers* probably militates against creditors' argument rather than for it.

All case law which has been cited holds that an income tax refund is a general intangible. See *In re Certified Packaging,*

*supra, In re Metric Metels Int'l, Inc.,* 20 B.R. 633, 636, (S.D.N.Y.1981), *In re Kendrick and King Lumber, Inc.,* 14 B.R. 764, 766 (Bankr.W.D.Okla.1981), *In re Kingswood,* 343 F.Supp. 498 (C.D.Calif.1972), *In re Scherbenske Excavating, Inc.,* 38 B.R. 84, 87–88 (Bankr.D.N.D.1984), *In re TWI, Inc.,* 39 U.C.C.Rep.Serv. 1031, 1033 (4th Cir.1984).

■ Tax refunds are general intangibles, not contract rights. Therefore reference in the financing statement to "contracts rights" did not include a tax refund.

### C.

Creditors contend nevertheless that the security agreement expanded the terms of the financing statement to include the tax refund as a general intangible. The financing statement in this case describes collateral as including "all proceeds of said collateral" and this phrase, they say, is defined by looking at the security agreement which defines "collateral" as including general intangibles (or "other intangibles" as it is phrased in the security agreement). Thus, they argue that the security agreement covers the tax refund as a general intangible and effectively enlarges the financing statement which does not include general intangibles.

They cite numerous cases to the effect that the filed financial statement need only notify record searchers in general terms that property is encumbered. See, *e.g., Mountain Credit v. Michigan Lumber and Supply, Inc.,* 498 P.2d 967 (Col.App. 1972) and *Marine Midland Bank-Eastern Nat. Assoc. v. Conerty Pontiac-Buick, Inc.,* 14 U.C.C.Rep.Serv. 814, 77 Misc.2d 311, 352 N.Y.S.2d 953 (1974).

A close reading of these cases shows however that they do not stand for the proposition that a description or classification *totally* omitted from the financing statement may effectively perfect a security interest. There must be at least an indication by type or class in the financing statement that the item is encumbered. Only then must the record searcher look

further for specificity. As stated by *White and Summers, supra,* p. 961:

> No reported case suggests that total omission of a description of collateral is tolerable. Nor do we believe it should be. The theory of notice filing permits a credit searcher to determine from the financing statement itself whether certain types of goods may be encumbered. If the financing statement suggests they are, then he must make further inquiry to find the complete state of affairs. He cannot rely on the premise that goods are described in a financing statement are, in fact encumbered. Nevertheless, he should be permitted to conclude the converse: collateral not listed is not encumbered.

The financing statement in this case makes no reference to the tax refund either specifically or under its general classification of "general intangible."

Finally, the phrase "proceeds of said collateral" in the financing statement does not refer to collateral as it may be expansively defined in the security agreement, but rather to the collateral set forth in the public record. Since the tax refund is in no way suggested by the language of the financing statement those having recourse to the record should be able to conclude that it is not encumbered.

#### D.

RCW 62A.9–106 was amended in 1981 to remove the definition of "contract rights" and reference to "contract rights" from the list of items which are not general intangibles. This might conceivably give the creditors a basis for arguing that contract rights are therefore general intangibles and reference to them in the financing statement is sufficient to cover the tax refund as a general intangible. However, it is clear from the "Draftsmen's Statement of Reasons for 1972 Changes in Official Text" (to which the later RCW amendment conforms), that "contract rights" are the same as accounts because the distinction formerly drawn in the code was unnecessary. The former definition deemed ac-

counts to be any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper while a contract right was any such right to payment not yet earned by performance. The revised definition of accounts takes in both account and contract right by defining "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper *whether or not it has been earned by performance* (emphasis added). See *In re Himlie Properties, Inc.,* 36 B.R. 32 (Bkr. W.D.WA 1983).

While a tax refund is a right to payment not yet earned by performance, it crystallizes into a general intangible, not an account because it is a right to repayment which is not "for goods sold or leased or for services rendered." See Draftsmen's Comment to 1972 Official Text. At most the record here gave notice that an interest was claimed in a type of account. Therefore the amendments to RCW 62A.9–106 do not aid the creditors position.

#### CONCLUSION

Secured creditors have not perfected their security interest in the tax refund by failing to include it in their financing statement by description or classification as a general intangible. It is therefore held that their secured claim in the $52,000 tax refund, pursuant to the trustee's objection thereto, is disallowed. Their secured claim to $4,000 from the sale of physical assets is allowed.

It is so ORDERED.